UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JONATHAN WESSLING,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL MINER, *et al.*,<br><br>    Defendants. | Civil No. 5:24-cv-00340-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court on the Plaintiff's Motion for Extension of Time [R. 18] and Response to the Court's Order to Show Cause [R. 19.] Although Plaintiff Wessling fails to establish good cause for an extension, the Court will **GRANT** a discretionary extension of time for service.

**I**

On January 16, 2024, while operating his vehicle on I-64 in Mount Sterling, Kentucky, Plaintiff Wessling was struck by a semi-tractor trailer. [R. 1-2 at 5.] He sustained serious injuries. *Id.* Mr. Wessling states that the offending vehicle was being operated by Defendant Michael Miner, who drove negligently and fled the scene of the accident. *Id.*

Plaintiff Wessling filed his initial state court complaint on October 14, 2024. [R. 1-2.] The Complaint names three defendants: Michael Miner, Carman Inc. (Miner's employer), and State Farm Mutual Automobile Insurance Company (Plaintiff Wessling's insurer). *Id.* at 5-8. On November 18, 2024, Defendant Carman removed the case to federal court. [R. 1.] Carman later clarified that Defendant State Farm consented to removal. [R. 13.] Lacking any indication that

service of process was ever achieved on Defendant Miner, the Court directed Plaintiff Wessling to show cause why the claims against him should not be dismissed for failure of service. [R. 17.]; *see* Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court.").

Plaintiff Wessling then responded that, in spite of his diligence, he has struggled to locate Mr. Miner's address. [R. 18.] Accordingly, he requests a 90-day extension of time in which to serve Mr. Miner. *Id.* Although Plaintiff Wessling does not establish good cause for a mandatory extension, the Court finds that a discretionary extension is appropriate.

## II

### A

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Courts undertaking a 4(m) analysis first "determine whether the plaintiff has shown good cause for the failure to effect service." *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424 (6th Cir. 2000) (Table). If he has, the rule's mandatory language requires the court to extend the time for service. *Id.*

However, "if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time." *Id.* "In other words, the court has discretion to permit late service even absent a showing of good cause." *Id.*; *see also*

2

*United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022), *cert. denied sub nom. United States & Mich., ex rel. Mohamad Sy v. Oakland Physicians Med. Ctr., LLC*, 143 S. Ct. 782 (2023) ("[A]bsent a finding of good cause, the court retains discretion as to whether or not to enlarge that timeframe."). Seven factors guide district courts in assessing the propriety of a discretionary extension. *See id.* at 569 (providing seven factors district courts should consider "when deciding whether to grant a discretionary extension of time in the absence of a finding of good cause").

Good cause is "a reasonable, diligent effort to timely effect service of process." *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021). "'[L]ack of prejudice and actual notice are insufficient' to establish good cause, as are 'mistake of counsel or ignorance of the rules.'" *Thul v. Haaland*, No. 22-5440, 2023 WL 6470733, at *2 (6th Cir. Mar. 1, 2023), *cert. denied*, 144 S. Ct. 96 (2023) (internal citation omitted). The Sixth Circuit has identified "three scenarios" giving rise to good cause: "(1) when the defendant has intentionally evaded service; (2) when the district court has committed an error; and (3) when a pro se plaintiff suffers from a serious illness." *Id.* "The common denominator in these situations 'is that something outside the plaintiff's control prevents timely service.'" *Id.*

Consistent with this principle, "mere inadvertence on the part of counsel" does not justify a mandatory extension. *See Davis v. Brady*, 9 F.3d 107, 3 (6th Cir. 1993) (Table); *see also Friedman*, 929 F.2d at 1157 ("[C]ounsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause."). For example, the fact that parties had discussed a waiver of formal service did not generate good cause, even in conjunction with counsel's personal and professional problems. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521–22 (6th Cir. 2006); *see also Tombragel v. Oral & Facial Surgery Assocs.,*

3

*Drs. Perry, Morrison & Waters, LLC*, No. 1:24-CV-14, 2024 WL 3638118, at *2 (S.D. Ohio Aug. 2, 2024) ("[L]ack of knowledge of a defendant's address is not good cause for failing to serve that defendant (at least absent some evidence suggesting that the defendant is affirmatively taking steps to conceal that address)."); *Tines v. PepsiAmericas, Inc.*, 265 F.R.D. 285, 287–88 (W.D. Tenn. 2010) (counsel's "calendar error" was the product of carelessness and did not establish good cause); *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 754 (E.D. Ky. 2011) (defendant's refusal to waive service did not justify plaintiffs' failure to comply with Rule 4(m)).

**B**

**1**

Here, Wessling has not established good cause for a mandatory extension. Mr. Wessling relies heavily on Carman's failure to supply Miner's address, as well as Wessling's counsel's erroneous inference that Carman would accept service for Defendant Miner. [R. 19.] However, "a plaintiff may not rely on another's delay in supplying needed information, but is obligated to pursue alternative methods in finding and serving defendant." *Friedman*, 929 F.2d at 1157 (citing *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988)). Further, "lack of knowledge of a defendant's address is not good cause for failing to serve that defendant (at least absent some evidence suggesting that the defendant is affirmatively taking steps to conceal that address)." *Tombragel*, 2024 WL 3638118, at *2. Neither is an unconfirmed assumption that someone else will accept service of process on a defendant's behalf. *See Turner v. City of Taylor*, 412 F.3d 629, 650-51 (6th Cir. 2005); *see also Bradford*, 767 F. Supp. 2d at 754-55. Thus, a mandatory extension of time is inappropriate here.

2

Faced with a dearth of good cause, the Court next considers whether the *Oakland Physicians* analysis weighs in favor of a discretionary extension. *See Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569. "[W]hen deciding whether to grant a discretionary extension of time in the absence of a finding of good cause[,]" district courts in the Sixth Circuit consider the following factors:

> (1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, *i.e.*, would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Id.*

Here, the balance of the *Oakland Physicians* factors favors an extension. First, a ninety-day extension would substantially exceed Rule 4(m)'s 90-day mandate. Plaintiff Wessling filed his state court complaint on October 14, 2024. [R. 1-2.] The case was removed on November 18, 2024. [R. 1.] If a ninety-day extension were granted the same day Plaintiff's Motion for an Extension was filed, service would be made almost six months late. *Cf. Nafziger*, 467 F.3d at 521–22 (delay of over six months necessitated dismissal); *Tombragel*, 2024 WL 3638118, at *2 (four-month extension would be excessive and unjustifiable). Accordingly, the first *Oakland Physicians* factor counsels against an extension.

But the second factor, prejudice to the defendant, favors Plaintiff Wessling. So far in the course of this litigation, Defendants Carman and State Farm have answered the Plaintiff's

Complaint and amended their Notice of Removal. [R. 1-2; R. 13.] No dispositive motions have been filed, and no order for meeting and report or scheduling order has been entered. Since the Court raised the service issue *sua sponte* in February 2025, nothing substantive has been filed. The action has been effectively paused during the pendency of the outstanding service problem. Given that this litigation remains in its relative infancy, an extension would not prejudice Defendant Miner beyond the inherent prejudice borne by civil defendants generally. *Cf. O'Brien v. Children's Home of N. Ky.*, No. 3:22-CV-00066-GFVT, 2025 WL 645870, at *4 (E.D. Ky. Feb. 26, 2025) (unfair prejudice counseled against extension when plaintiffs took seventeen months to effect service and an omnibus motion to dismiss was litigated in defendant's absence).

Third, there is no evidence that Miner has actual knowledge of the lawsuit. Miner has not appeared or defended himself in federal court. Nor is there any indication that he did so in state court. Thus, the third factor favors Mr. Miner.

As does the fourth. A dismissal without prejudice would not prejudice Wessling by barring his claims on statute of limitations grounds. Ordinarily, in Kentucky, a common law negligence claim is subject to a one-year statute of limitations. *See Phillips v. Lexington-Fayette Urb. Cnty. Gov't*, 331 S.W.3d 629, 634 (Ky. Ct. App. 2010) ("Because [plaintiff] alleges negligence, the applicable statute of limitations is one year pursuant to KRS 413.140(1)(a)."). However, the Motor Vehicle Reparations Act (MVRA)'s "two-year statute of limitations preempts the general one-year statute of limitations for personal injury claims where those injuries 'aris[e] from the ownership, maintenance, or use of a motor vehicle' and are not otherwise barred by the MVRA's no-fault provisions." *Powers v. Ky. Farm Bureau Mut. Ins. Co.*, 694 S.W.3d 361, 374 (Ky. 2024); *see also id.* at 366 ("The [MVRA] generally imposes a two-year statute of limitations for tort actions arising from motor vehicle accidents, accruing on

6

the date of injury or death, or the plaintiff's last PIP payment." (citing Ky. Rev. Stat. Ann. 304.39-230(6))); *Troxell v. Trammell*, 730 S.W.2d 525, 528 (Ky. 1987). Applying this two-year limitations period here (and even assuming Wessling's action accrued on the date of injury), a dismissal without prejudice would leave him with enough time to refile his claims against Defendant Miner.

Fifth, Wessling's good faith efforts to achieve service weigh in his favor. After this action was removed, Plaintiff Wessling sought Miner's address by re-serving discovery requests on defendant Carman. Carman did not provide the address, but indicated that Miner could be contacted through Carman's counsel. From this, Wessling's counsel erroneously inferred that Carman would accept service for Miner. Despite this error, Mr. Wessling's counsel reached out to Carman again, seeking to clarify its discovery responses. Carman explained that it could not accept service for Defendant Miner. However, in an email exchange between the parties, Carman ultimately provided an address where Wessling could attempt to serve Miner. Thus, it appears Wessling is making good faith efforts to locate an address for service of process. This is not a case in which counsel has been dilatory for an extended period. *Cf. O'Brien,* 2025 WL 645870, at *5 (finding a discretionary extension inappropriate when, for more than a year, plaintiffs made no effort to achieve service). Finally, the sixth and seventh factors are minimally relevant. Plaintiff Wessling is not *pro se* and there are no other equitable factors weighing in either direction.

Though this is a close call, the Court finds that the balance of these factors favors Plaintiff Wessling. The Court is particularly persuaded by the absence of undue prejudice to Defendant Miner, as well as Plaintiff Wessling's good faith efforts to locate Miner's address. Because the balance of the *Oakland Physicians* factors weighs in favor of a discretionary

extension, the Court will grant the requested relief. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Extension of Time **[R. 18]** is **GRANTED**;

2. The Court's Show Cause Order **[R. 17]** is **DISCHARGED**; and

3. Plaintiff Wessling **SHALL** serve Defendant Miner within **90 (ninety) days** of the entry of this Order, or face dismissal of the claims against him under Rule 4(m).

This the 10th day of June, 2025.

Gregory F. Van Tatenhove
United States District Judge